UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN LEE HAYWOOD,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF LAKEWOOD, et al.,<br><br>    Defendants. | CASE NO. C10-5694BHS<br><br>ORDER DENYING CITY OF LAKEWOOD'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND FOR STAY OF DISCOVERY |

This matter comes before the Court on Moving Defendants' motions for judgment on the pleadings (Dkt. 20) and motion to stay discovery (Dkt. 26).[1] The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies them for the reasons stated herein.

## I. PROCEDURAL HISTORY

On January 27, 2011, the City filed a motion for judgment on the pleadings. Dkt. 20. On February 14, 2011, Plaintiff ("Haywood") responded in opposition. Dkt. 22. On February 18, 2011, the City replied.

---

[1] Originally the Moving Defendants included the City of Lakewood ("City") and the Lakewood Police Department ("LPD"). However, on March 9, 2011, the Court granted Haywood's motion to dismiss LPD from this action. Dkt. 31. Therefore, LPD's motion for judgment on the pleadings is moot and not considered herein. The court will hereafter refer to the moving party on the instant motions as the "City."

ORDER - 1

On February 17, 2011, the City filed a motion for protective order and to temporarily stay discovery. Dkt. 26. On March 7, 2011, Haywood responded in opposition to the motion. Dkt. 29. On March 11, 2011, the City replied. Dkt. 32.

## II. FACTUAL BACKGROUND

This case arises out of Haywood's challenge to his treatment during a traffic incident wherein he was stopped, detained, searched, and released. *See* Dkt. 1 (Complaint). As a result of this incident, Haywood alleges violations of his civil rights under 42 U.S.C. §§ 1983, 1988, and the Fourth Amendment. *See* Dkt. 1 (Complaint). The City denies the allegations; the instant motion pertains only to Haywood's claim against the City and a *Monell*[2] claim made against the City.

Haywood alleges that the following facts support his *Monell* Claim:

> 10. On or about February 27, 2009, Brian Haywood was driving home from work around 3:30 pm. Mr. Haywood is employed at the Seattle-Tacoma International Airport as a field service technician.
> 11. As Mr. Haywood was driving through Federal Way, WA, he noticed that a police car was following him. The police cruiser then pulled up beside him and then again behind him.
> 12. The police car continued to follow Mr. Haywood for about 20 minutes and was joined by about three or four additional police cars. At this time, the police cars' lights were initiated and Mr. Haywood pulled to the side of Interstate 5 near the Bridgeport exit.
> 13. After pulling over, Mr. Haywood was directed by the Defendant Officers, with guns drawn, to exit his vehicle, put his hands up, walk backwards and get down on his knees. After complying with the officers' demands, Mr. Haywood was immediately handcuffed and taken to one of the police cars and given a pat down and search of his person.
> 14. One of the officers then read Mr. Haywood his Miranda rights and asked him if he owned the vehicle he was driving. Mr. Haywood informed the officers that he had purchased the vehicle approximately two weeks ago.
> 15. The officers then inquired about where he purchased the vehicle and Mr. Haywood told them he bought it at Independent Auto Sales in Shoreline.
> 16. The officers retrieved paperwork from the glove compartment in Mr. Haywood's vehicle and called Independent Auto Sales. They confirmed that the vehicle was not stolen and had in fact been purchased by Mr.

---

[2]*Monell v. Dept. of Social Services*, 463 U.S. 658 (1978). While Haywood has alleged several causes of action, this order is limited solely to his *Monell* claim.

ORDER - 2

Haywood. The truck had been previously repossessed and was mistakenly reported stolen by the original owners.

17. Despite the fact that the officers determined that Mr. Haywood was not driving a stolen vehicle, they continued to detain and question him.

18. The officers proceeded to conduct a search of Mr. Haywood's vehicle, prior to obtaining any consent to search from him, and located items which they deemed to be suspicious.

19. One of the defendant officers told Mr. Haywood that he looked like a "Middle Eastern male" through the car window because he had "all that stuff on his face," referring to Mr. Haywood's facial hair.

20. The defendant Officers continued to detain Mr. Haywood, even after determining that his car was not stolen, based on things they found while searching his car prior to obtaining consent.

21. Even after determining that Mr. Haywood's vehicle was not stolen, the defendant Officers called the FBI and had them come to the scene to interview Mr. Haywood.

22. Even after determining that Mr. Haywood's vehicle was not stolen, the defendant Officers questioned Mr. Haywood about the name of a book called "The Last Jihad" he had written down on a folder in his truck.

23. Even after determining that Mr. Haywood's vehicle was not stolen, the defendant Officers questioned Mr. Haywood about what church he attended and his involvement there.

24. Over an hour after the initial stop and after the officers had conducted a complete search of Mr. Haywood's vehicle, the officers asked Mr. Haywood to sign a consent to search form.

25. Eventually, Mr. Haywood was released by the Lakewood Police officers and the FBI.

26. At no time during the events described above was Plaintiff Haywood intoxicated, incapacitated, a threat to the safety of himself or others, or disorderly. He had not committed any criminal offenses.

27. The defendant police officers had no warrant for the arrest of the plaintiff, no probable cause to continue his detention after determining that his vehicle was not stolen, did not gain proper consent to search his vehicle, and had no legal cause or excuse for the lengthy detention of the plaintiff.

28. At all times during the events described above, the defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during the said events.

Complaint ¶¶ 10-28. Based on the foregoing, Haywood further alleges as follows:

36. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

37. The Lakewood Police Department was formed on November 1, 2004. Prior to February 27, 2009, the City of Lakewood developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Lakewood, which caused the violation of Mr. Haywood's rights.

ORDER - 3

   38. It was the policy and/or custom of the City of Lakewood to inadequately and improperly investigate citizen complaints of police misconduct, and acts of police
misconduct were instead tolerated by the City of Lakewood.
   39. It was the policy and/or custom of the City of Lakewood to inadequately supervise and train its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.
   40. As a result of the above described policies and customs, police officers of the City of Lakewood, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.
   41. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of Lakewood to the constitutional rights of persons within the City, and were the cause of the violations of plaintiff's rights alleged herein.

Complaint ¶¶ 36-41.

## III. DISCUSSION

**A.** *Monell*

To establish *Monell* liability, a plaintiff must show a widespread policy of indifference to constitutional rights. Local governments are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983. *Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003) (citing *Monell*, 436 U.S. at 691 n. 55). Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside the scope of these policies or customs.

> [T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, . . . a municipality cannot be held liable solely because it employs a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

*Monell*, 436 U.S. at 691. However it may be held liable under the *Monell* framework. *See, e.g., Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009).

ORDER - 4

As alternatives to proving the existence of a policy or custom of a municipality, a plaintiff may show: (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). The Ninth Circuit has held that a municipal policy "may be inferred from *widespread* practices or evidence of *repeated* constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Id.* (emphasis added).

**B.     Judgment on the Pleadings Standard**

The City moves for judgment on the pleadings under Fed. R. Civ. P. 12(c) as to Haywood's *Monell* claim against the City. Dkt. 20. Rule 12(c) requires that a motion for judgment on the pleadings be made after the pleadings (limited to answer and complaint) are closed, which is the case here. *See* Complaint (Dkt. 1) and Answer (Dkt. 16).

A motion for judgment on the pleadings requires the Court to take all the allegations in the pleadings as true, and construe the pleadings in the light most favorable to the nonmoving party. *Doyle v. Raley's, Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998). If, on a motion under Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.

Haywood argues that the instant motion should be considered one for summary judgment under Rule 56 because the City relies on matters outside the pleadings, namely information gained during a post-arrest search. Haywood argues that he did not allege any facts regarding the post-arrest search and, therefore, such should be considered matters outside the pleadings. In opposition, the City admits to relying on such evidence in its

ORDER - 5

motion but ask the Court to disregard those facts and consider only the facts as described within the complaint and answer. *See* Dkt. 28 at 7.

The Court will disregard matters outside the pleadings and declines to convert the motion (Dkt. 20) as one for summary judgment under Rule 56.

**C.     The City's Rule 12(c) Motion**

The City argues that Haywood has not sufficiently pleaded his *Monell* claim in light of the standards for notice pleading as articulated by the Supreme Court in *Twombly* and *Iqbal. See Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In opposition, Haywood argues that he need only provide sufficient facts upon which the Court could infer that a *Monell* violation may have occurred.

Haywood's sole argument to support his *Monell* claim rests on the following argument:

> Plaintiff has pled facts which show more than a mere possibility that Defendant City of Lakewood could be held liable under a *Monell* claim. It is plausible that the numerous officers' unconstitutional actions in this case were implementing or executing a 'policy statement . . . or decision officially adopted an promulgated' by the City of Lakewood or that their unlawful actions were caused by inadequate training. *Monell*, 463 U.S. at 690-91.

Dkt. 24 at 6. To support this position, Haywood relies on two cases that are inapposite. *See id* (citing *Shaw v State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986); *Barrett v. Maricopa County Sheriff's Office, et al*., 2010 WL 46786 (D. Ariz.)).

*Shaw* concerned allegations of a pattern of offenses, not a single offense as alleged by Haywood. *See* 788 F.2d at 610 ("The Shaws allege that for a period of almost four years San Jose police officers entered the bar as many as 18 times a shift, repeatedly brought police officers from other jurisdictions into the bar, attempted on more than one occasion to persuade the Shaws' employees to quit, . . . ."). In *Shaw*, the Ninth Circuit

ORDER - 6

determined that sufficient facts were alleged to infer a violation under *Monell*. Similarly in *Barrett* (an unpublished case), the district court determined that sufficient facts were pleaded to support an inference of a *Monell* violation. 2010 WL 46786 (facts implicated a pattern or practice of violating inmates' health care rights at a jail).

Here, Haywood alleges no such pattern or evidence of widespread or repeated instances of acts by City employees that would support a *Monell* claim. Instead, Haywood, argues that the Court could infer a *Monell* violation simply from the fact that several officers at the scene went along with the alleged civil rights violations. The facts as pleaded are insufficient to make such an inference and Haywood's argument is made without adequate legal support.

Therefore, Haywood's complaint is deficient as it relates to his *Monell* claim.

**D.     Haywood's Motion to Amend**

Haywood urges the Court to deny the City's motion for judgment on the pleadings and, instead, permit Haywood to amend the complaint to correct the deficiencies outlined above. Dkt. 24 at 9. In opposition, the City urges the Court to deny Haywood's request for leave to amend. Dkt. 28 at 7 (arguing that (1) Haywood does not offer any factual basis on which to base an amendment and (2) Haywood did not provide the Court with a proposed amended complaint).

The Court notes that Haywood did not comply with the local rules regarding motions for leave to amend the complaint. To the extent Haywood's request to amend was intended to be a motion, it is denied without prejudice. However, leave to amend is generally granted freely. *See* Fed. R. Civ. P. 15. Therefore, Haywood may file a proper motion to amend in accord with the local rules.

**E.     Stay of Discovery**

The City moves the Court for a stay of discovery pending the Court's order on its motion for judgment on the pleadings. Dkt. 26. It also seeks a stay with respect to

ORDER - 7

discovery regarding the individual defendants based on the City's anticipated filing of a motion for summary judgment based on qualified immunity. *Id*. However, the City also plans to take the deposition of Haywood (i.e., engage in limited discovery) prior to filing its motion for summary judgment on qualified immunity.

The Court concludes that the City's motion is premature because (1) its motion for judgment on the pleadings is denied herein; and (2) it has not filed the motion for summary judgment on the issue of qualified immunity yet. Additionally, it would be patently unfair to permit the City to engage in discovery (taking depositions) while preventing Haywood from engaging in discovery.

Therefore, the motion for temporary stay is denied without prejudice.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the City's motions for judgment on the pleadings (Dkt. 20) and temporary stay of discovery are **DENIED without prejudice** as discussed herein. Haywood may **FILE** a motion to amend complaint on or before April 1, 2011.

DATED this 21st day of March, 2011.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge